# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

BIKERS OF LESSER TOLERANCE
("BOLT"), *et al*.,

      Plaintiffs,

v.

LAS VEGAS METROPOLITAN POLICE
DEPARTMENT, *et al*.,

      Defendants.

Case No. 2:04-CV-01144-KJD-PAL

**ORDER**

Presently before the Court is Defendants' Motion for Summary Judgment (#39).  Plaintiffs filed a response in opposition (#41) to which Defendants replied (#54).  Also before the Court is Plaintiffs' Cross-motion for Summary Judgment (#42) to which Defendant filed a response in opposition (#54).

I.  Facts

Plaintiff Bikers of Lesser Tolerance ("BOLT") is a national organization of motorcycle enthusiasts.  The primary purpose of the association is to lobby on behalf of its members on various issues relating to the rights of motorcycle riders or "bikers".  Plaintiff Richard Quigley ("Quigley") is the California State Director of BOLT and Plaintiff Richard Bianco ("Bianco") is on the national Board of Directors of BOLT.

1    In May 2001, Quigley traveled from his home in California to a gathering of bikers in Battle

2    Mountain, Nevada.  Quigley was riding his motorcycle and was wearing a helmet, or protective

3    headgear, that he believed was required by Nevada Revised Statute 486.231.  Near Battle Mountain,

4    Quigley and two other riders were stopped by the Nevada Highway Patrol ("NHP").  They were

5    issued citations for not wearing "DOT approved" helmets in violation of the Nevada Helmet Law.

6    However, the Battle Mountain District Attorney later informed Quigley that neither he nor the other

7    bikers would not be prosecuted for the citations.

8    In December 2001, Quigley began contacting Nevada officials in an effort to determine how

9    he could comply with the Nevada Helmet Law.  The Nevada DMV Director sent him a copy of the

10   detailed standard adopted by Nevada, 49 C.F.R. § 571.218, aka Federal Motor Vehicle Safety

11   Standard No. 218 ("FMVSS-218"), the standard promulgated by the National Highway Traffic Safety

12   Administration ("NHTSA") for helmets sold or offered for sale in the United States.

13   Quigley found the standard too complicated to understand and upon further inquiry was

14   referred to Colonel Hosmer, Commander of the NHP.  Hosmer forwarded Quigley's request to the

15   Nevada Attorney General and requested an opinion on what constituted a legal helmet under Nevada

16   law.  On October 7, 2002, the attorney general replied by stating that the standard for helmet

17   compliance in Nevada was FMVSS-218, and enclosed a NHTSA brochure designed to assist riders

18   in understanding what to look for in deciding if a helmet complies with the law.  Quigley found the

19   information too general to be helpful.

20   On November 2, 2002, the Nevada Attorney General issued an opinion, No. 2002-41, that

21   stated compliant helmets could be identified through examination of mandatory stickers placed on

22   the inside and outside of the helmets, the construction of the helmet, and reference to the

23   manufacturers and the NHTSA.  The opinion also suggested changes to the Nevada Helmet Law that

24   would institute a progressive series of fines rather than immediate misdemeanor charges.  However,

25   despite an effort to change the language of the Nevada law which included testimony from Quigley

26

2

1   and Colonel Hosmer before the Nevada Senate Transportation Committee, no changes to the statute

2   were made.

3          In February 2004, Quigley was assigned by Bianco to investigate the risk of arrest and

4   confiscation of motorcycles by the Las Vegas Metropolitan Police Department ("METRO") for

5   wearing "unlawful headgear" if they attended the 2004 Laughlin River Run, a major national biker

6   gathering.  The NHP informed Quigley that only failure to wear any protective headgear would result

7   in arrests.  METRO informed Quigley that according to the Department's policy that it was up to the

8   individual officer's "best judgment" and "common sense" in determining whether there was a

9   violation of the statute and what action the officer should take.

10         Plaintiffs then filed the present complaint on August 16, 2004 seeking a judgment declaring

11  the Nevada Helmet Law unconstitutionally vague as written and applied, a permanent injunction

12  preventing Defendants from enforcing the Nevada Helmet Law in violation of Plaintiffs'

13  constitutional rights, and attorneys fees and costs.  On January 19, 2007, Defendants' filed the

14  present motion for summary judgment seeking to dismiss Plaintiffs' Complaint based on a lack of

15  standing, ripeness, and on the merits.

16  II.  Standard of Review and Analysis

17         To prove that the helmet law is unconstitutionally vague, Plaintiffs must first demonstrate

18  that the law "does not define the conduct it prohibits with sufficient definitiveness, and second must

19  demonstrate that the law does not establish minimal guidelines to govern law enforcement."

20  Easyriders Freedom F.I.G.H.T. v. Hannigan, 92 F.3d 1486, 1493 (9th Cir. 1996)(citing United States

21  v. Davis, 36 F.3d 1424, 1434 (9th Cir. 1994).  "A criminal statute is not vague if it provides adequate

22  notice in terms that a reasonable person of ordinary intelligence would understand that her conduct is

23  prohibited."  United States v. Martinez, 49 F.3d 1398, 1403 (9th Cir. 1995).

24         Here, Plaintiffs may not assert a facial challenge to the helmet law.  "Where a law at issue

25  does not implicate First Amendment rights, it may be challenged for vagueness only as applied

26  unless the enactment is impermissibly vague in all of its applications."  Easyriders, 92 F.3d at 1493-

3

94 (internal quotations ommitted)(citing <u>Schwartzmiller v. Gardner</u>, 752 F.2d 1341, 1348 (9th Cir. 1984)); *see also* <u>United States v. Doremus</u>, 888 F.2d 630, 634 (9th Cir. 1989)(statute facially vague if it specifies "no standard of conduct at all").

While the statute[1] in the present action may have some ambiguity on its face regarding the exact specifications for protective headgear that complies with the law, the statute does define generally what conduct is prohibited, and does establish guidelines for law enforcement officials. Accordingly, the helmet law can only be challenged as applied to a specific motorcyclist. "In scrutinizing a statute for intolerable vagueness as applied to specific conduct, courts must take the statute as though it read precisely as the highest court of the State has interpreted it." <u>Schwartzmiller</u>, 752 F.2d at 1348 (citations omitted). "In the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." See <u>Arizona Elec. Power Coop., Inc. v. Berkley</u>, 59 F.3d 988, 991 (9th Cir. 1995).

The Nevada Supreme Court has not interpreted the language of the statute other than to find that the statute as written does not violate constitutional guarantees of equal protection and did not violate any right to privacy. See <u>Nevada v. Eighth Judicial Dist. Court</u>, 708 P.2d 1022 (Nev. 1985). However, given the similar language and construction between the California and Nevada statutes,

---

[1]NRS 486.231 is constructed similarly to California's helmet law, California Vehicle Code § 27803(b), which required drivers and passengers of motorcycles to wear safety helmets meeting requirements established by the California Department of Transportation including the requirements imposed by FMVSS-218. NRS 486.231 reads in pertinent part:

> 1. The department shall adopt standards for protective headgear and protective glasses, goggles or face shields to be worn by the drivers and passengers of motorcycles and transparent windscreens for motorcycles.

> 2. Except as provided in this section, when any motorcycle, except a trimobile or moped, is being driven on a highway, the driver and passenger shall wear protective headgear securely fastened on the head and protective glasses, goggles or face shields meeting those standards. Drivers and passengers of trimobiles shall wear protective glasses, goggles or face shields which meet those standards.

1    this Court predicts that the Nevada Supreme Court would follow the interpretation and reasoning of

2    the California courts which require "only that the consumer wear a helmet bearing a *certification* of

3    compliance." Buhl v. Hannigan, 20 Cal. Rptr. 2nd 740,745 (Cal. Ct. App. 1993).

4        Given the likely interpretation of the Nevada statute and Plaintiffs' inability to bring a facial

5    challenge to the Nevada Helmet Law, the Court concludes that Plaintiffs do not have standing to

6    challenge the vagueness of the helmet law in this action because they only seek an injunction against

7    future enforcement.  The standing requirements of Article III of the Constitution only allow review of

8    "cases and controversies" which requires a plaintiff seeking to invoke a federal court's authority to

9    show "(1)[he] has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or

10   imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of

11   the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed

12   by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S.

13   167, 180-81 (2000); *see also* Pickern v. Holiday Quality Foods Inc., 293 F.3d 1133, 1137 (9th Cir.

14   2002).  Where a plaintiff cannot satisfy these requirements, the Court lacks jurisdiction.

15       Only one Plaintiff, Quigley, has asserted in this case that he was improperly stopped and cited

16   for violating the helmet law.  However, even if the Court declared the Nevada Helmet Law

17   unconstitutionally vague as applied to Quigley such a favorable decision would not redress his injury

18   because the complaint only seeks an injunction against future enforcement of the helmet law.  Any

19   past injury suffered by Plaintiffs does not give them standing to enjoin future enforcement of the

20   helmet law.  See Easyriders, 92 F.3d at 1495.  Such a claim is not ripe for review.  See id.  "Where

21   there are insufficient facts to determine the vagueness of the law as applied, the issue is not ripe for

22   adjudication." Id.

23       Here, Plaintiffs have only provided speculative assertions that they will be potentially

24   violating the Nevada Helmet Law and will be improperly cited or arrested due to the possibly vague

25   application of the law.  Specifically, in communicating with Defendants, Plaintiffs inquired whether

26   they would be arrested for wearing "unlawful" protective headgear.  The vagueness of the question

1  itself is designed to elicit a vague response.  The word "unlawful" in the question suggests that

2  Plaintiffs already know that the protective headgear does not satisfy the technical requirements of

3  FMVSS-218.  Such an intentional violation of the statute has been determined by the California

4  Court of Appeals as adequate grounds for citing violators of the law.  See Bianco v. Cal. Hwy.

5  Patrol, 29 Cal. Rptr. 2d 711 (Cal. Ct. App. 1994).  Resolution of Plaintiff's complaint requires the

6  Court to speculate as to application of the law to the facts.  The standing requirements of Article III

7  do not allow for such speculation.  See Easyriders, 92 F.3d at 1495.  Since Plaintiffs' claim is not

8  ripe and does not satisfy the standing requirements of Article III, the Court must dismiss Plaintiffs'

9  Complaint.

10  III.  Conclusion

11      Accordingly, IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment

12  (#39) is **GRANTED;**

13      IT IS FURTHER ORDERED that Plaintiffs' Complaint is **DISMISSED**;

14      IT IS FURTHER ORDERED that Plaintiff's Cross-motion for Summary Judgment (#42) is

15  **DENIED as moot**.

16      DATED this 24th day of September 2007.

17

18

19      _____

20      Kent J. Dawson
        United States District Judge

21

22

23

24

25

26

6